IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO.  3:22-00055

JOTESA RUTH PORTER

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Jotesa Ruth Porter's Motion to Dismiss. ECF No. 26. Defendant argues the Indictment against her should be dismissed, as the statutes under which she is charged violate her Second Amendment rights under *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022). The Government responds that there is no constitutional violation because the statutes in question do not fall under the plain text of the Second Amendment. Resp. of the U.S. in Opp. to Def.'s Mot. to Dismiss at 4-5, ECF No. 32. For the reasons stated below, this Motion is **DENIED**. Def.'s Mot. to Dismiss, ECF No. 26.

**BACKGROUND**

On March 15, 2022, the Grand Jury returned a two-count indictment against Defendant Jotesa Ruth Porter for knowingly making false statements or representations regarding firearms records in violation of 18 U.S.C. § 924(a)(1)(A) (Count I) and knowingly disposing of a firearm to a convicted felon in violation of 18 U.S.C. §§ 922(d)(1) and 924(a)(2) (Count II). Indictment, ECF No. 4.  The indictment concerns four firearms Defendant purchased for C.P., a convicted felon Defendant shares two children with and with whom she was living at the time. Def.'s Mot. to Dismiss at 1, ECF No. 26.

On June 30, 2020, C.P. messaged a pawn shop in Huntington, West Virginia about the four firearms, noting he would come in to look at them and then send his wife to buy them. *Id.* at 1. C.P. gave money to Defendant and informed the pawn shop via Facebook Messenger that Defendant was on her way. *Id.* at 1-2. Defendant purchased the firearms, knowing that C.P. was a convicted felon and it was illegal for her to purchase the firearms for him. *Id.* at 2. In the process of purchasing the firearms, Defendant filled out a Department of Justice Bureau of Alcohol, Tobacco, Firearms, and Explosives Transaction Record, in which she certified she was the actual buyer of the firearms. Resp. of the U.S. in Opp. to Def.'s Mot. to Dismiss at 1-2, ECF No. 32.

On July 18, 2020, law enforcement officers responded to a 911 call in which the driver of a vehicle claimed C.P. was chasing and shooting at him. *Id.* at 2. Officers located C.P. and questioned him about the incident. *Id.* When questioned, C.P. alleged he was pursuing the vehicle because he believed the other driver had stolen two firearms from him. *Id.* at 2-3. Officers searched the other vehicle and located two of the firearms Defendant had purchased. *Id.* at 2-3. When questioned about the firearms, Defendant initially told law enforcement her father had given her the money to purchase them. Def.'s Mot. to Dismiss at 2, ECF No. 26. Several months later, she admitted to buying the firearms so C.P. could access them. Resp. of the U.S. in Opp. to Def.'s Mot. to Dismiss at 3, ECF No. 32.

Defendant argues the Indictment should be dismissed, as both counts infringe on her Second Amendment rights under the standard set forth in *Bruen*. Def.'s Mot. to Dismiss at 4, ECF No. 26. She alleges that because possession of a firearm falls under the plain text of the Second Amendment, so too does the purchase and transfer of firearms to others. *Id.* She argues the Government will not be able to rebut the presumption that Defendant's conduct is protected, as

regulations concerning the purchase and transfer of firearms do not fall within the Nation's historical tradition. *Id.*

The United States responds that the Court need not reach the historical inquiry because neither statute implicates conduct that falls under the Second Amendment's plain text. Resp. of the U.S. in Opp. to Def.'s Mot. to Dismiss at 4-5, ECF No. 32. The Government further argues that, even if the Court were to analyze the Nation's historical tradition of firearm regulation, there are sufficient historical analogues to justify the statutes in question. *Id.* at 5.

## LEGAL STANDARD

Prior to *Bruen*, courts assessed the constitutionality of regulations under the Second Amendment using the means-end analysis set forth in *District of Columbia v. Heller*, 554 U.S. 570 (2008). More recently, however, the Supreme Court replaced this means-end scrutiny with a two-step text-and-history approach. *Bruen*, 142 S. Ct. at 2126. Under this approach, courts must first determine whether the individual's conduct falls under the Amendment's plain text—if it does, "the Constitution presumptively protects that conduct." *Id.* If the conduct is presumptively protected, the Government can rebut this presumption by demonstrating the firearm regulation is "consistent with this Nation's historical tradition." *Id.* Only after this showing "may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id*. at 2130 (internal quotation marks omitted).

## ANALYSIS

Defendant's argument centers on the idea that because felon disarmament laws violate the Second Amendment, so too do laws that prevent or inhibit individuals from transferring firearms

to felons. *See, e.g.*, Def.'s Mot. to Dismiss at 13, ECF No. 26; Def.'s Reply in Supp. of Mot. to Dismiss at 10, ECF No. 33. To the extent it is premised on the idea that felon disarmament laws are unconstitutional, Defendant's argument fails. Even if it were not premised on this idea, Defendant's argument would still fail under the *Bruen* analysis—none of the statutes under which Defendant has been charged implicate the plain text of the Second Amendment. Count I, which charges Defendant with making false representations regarding firearm records, has no bearing on Defendant's ability to keep and bear arms. Nor does Count II, knowingly disposing of a firearm to a convicted felon, prevent Defendant from exercising her Second Amendment rights. Moreover, as to Count II, there are sufficient historical analogues to indicate the regulation falls within this Nation's historical tradition

Starting with felon disarmament laws writ large, this Court finds that nothing in *Bruen* implicates the constitutionality of these laws. In *Bruen*, the Supreme Court clarified its inquiry centered on "how and why the regulations burden a *law-abiding* citizen's right to armed self-defense." *Id*. at 2133 (italics added). The distinction between law-abiding and non-law-abiding citizens comports with earlier cases such as *District of Columbia v. Heller*, 554 U.S. 570, 625-626 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010). In *Heller*, for example, the Supreme Court specified that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." 554 U.S. at 626. *McDonald* reiterated this instruction, citing felon disarmament laws as an instance under which Second Amendment rights can be limited. 561 U.S. at 786. *Bruen* did not change the distinction between law-abiding and non-law-abiding citizens—thus, nothing in *Bruen* prevents Congress from prohibiting felons from possessing firearms.

Even assuming, *arguendo*, that *Bruen* did call into question the constitutionality of felon disarmament laws, both counts against Defendant survive the *Bruen* inquiry—Defendant has not been charged with any conduct that falls under the plain text of the Second Amendment. For example, Count I, knowingly making false statements or representations regarding firearms records in violation of 18 U.S.C. § 924(a)(1)(A), does not infringe on Defendant's right to keep and bear arms. The Second Amendment has only been held to protect an individual's right to possess a firearm; *Heller* is clear the right is not one "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 554 U.S. at 626. Defendant's claim that the Second Amendment allows her to be untruthful as to the manner and purpose for purchasing the firearm is without merit.

Nor does Count II, charging Defendant with knowingly disposing of a firearm to a convicted felon, involve conduct that falls within the Second Amendment's plain text. While Defendant conflates the right to possess a firearm with the right to sell and transfer it, the Fourth Circuit has held that Second Amendment rights do not extend to selling or transferring a firearm. For example, in *United States v. Chafin*, 423 F. App'x. 342, 344 (4th Cir. 2011), the defendant's Second Amendment right to bear arms was not violated when he was convicted of selling a firearm to a person he knew or had reasonable cause to believe was an unlawful user of drugs. *Id.* There was no authority that even "remotely suggests that, at the time of its ratification, the Second Amendment was understood to protect an individual's right to sell a firearm." *Id.*

Defendant argues *Chafin* should be reassessed in light of *Bruen*. However, whether the sale and transfer of firearms falls under the Second Amendment's purview would not materially change between *Bruen* and *Heller*. The Court notes that *Bruen* requires courts to examine whether conduct falls within the Second Amendment's plain text, while *Heller* asks them to examine "whether the

challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *Id.* (citing *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010)). Without delving into whether these threshold inquiries are materially different, the Court finds that, here, they yield the same result. In the process of finding that a regulation on transferring firearms did not burden the defendant's Second Amendment rights, the Fourth Circuit in *Chafin* made clear the conduct did not fall within the Second Amendment's plain text. There is no reason to think this finding has changed.

Even so, Count II would still pass constitutional muster under the second step of *Bruen*. As the Government has established, there are sufficient historical analogues of regulating the sale and transfer of firearms. Resp. of the U.S. in Opp. to Def.'s Mot. to Dismiss at 19-20, ECF No. 32. Defendant argues these historical regulations are inapposite because they regulate the commercial, rather than individual sale, of firearms. Def.'s Reply in Supp. of Mot. to Dismiss at 3, ECF No. 33. This is a distinction without a difference. *Bruen* identifies two metrics to determine whether regulations are relevantly similar: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." 142 S. Ct. at 2132-33. Here, regulating commercial sale of firearms is functionally the same in both manner and purpose as regulating individual sale. Regulating this conduct therefore falls within the Nation's historical tradition.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion to Dismiss. ECF No. 26. The Court finds that *Bruen* does not implicate the constitutionality of felon disarmament laws—*Bruen*, like *Heller* and *McDonald*, distinguishes between the rights of law-abiding and non-law-abiding citizens under the Second Amendment. Even so, the statutes under which Defendant

has been charged would still survive the *Bruen* analysis: neither fall within the Second Amendment's plain text, and thus, do not violate her constitutional rights. Even if the conduct implicated in Count II, knowingly disposing of a firearm to a convicted felon, did fall within the Amendment's plain text, the Government has rebutted the presumption of unconstitutionality by providing sufficient historical analogues of regulating the sale and transfer of firearms.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and the defendant, the U.S. Attorney's Office, the U.S. Probation Office, and the U.S. Marshals Service.

ENTER:     January 5, 2023

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE